3-22-0140 consolidated with 3-22-0141 and 3-22-0142. Archer Bank, successor agent by merger with Allegiance Community Bank, appellant, v. Mark Vanderberg and Rhonda Vanderberg, appellees. Mr. Cassidy, you may proceed. Thank you. And may it please the Court, my name is Tom Cassidy. I am the attorney for the plaintiff, appellant, Archer Bank. The issue in this appeal is whether the circuit court properly terminated the citation to discover assets to the three appellees, citing Rule 277 six-month automatic expiration period, when the circuit court repeatedly granted continuances of those citations in written orders, and when good cause existed for the citations to be extended. A very brief recitation of the important facts. The plaintiff, appellant, Archer Bank, obtained a judgment against Mark Vandenberg, who is not a party to this appeal, in 2012. The judgment was around $6 million. It is now with interest around $11 million. The judgment was revived in 2019. The case is now in supplementary proceedings, and the plaintiff is attempting to collect that debt. To those efforts, the plaintiff sent citations to discover assets to the debtor, Mr. Vandenberg, as well as several third parties, including the three respondents to this appeal. The three respondents are the debtor's wife, Rhonda Vandenberg, and two businesses that are affiliated with the debtor. Archer Bank received a response from the debtor. He responded to the citation to discover assets and indicated in one part of the response that he had no business interests. In response to the question as to list your business interests, he indicated none. He later amended it to include seven businesses, and now we found out even later that there are 50 or more businesses in Illinois alone. At one time, by his own admission, he had a net worth of $88 million and assets of $276 million. The three respondents in this appeal responded to the citations issued to them, and mostly their responses were objections, but they did provide some documents. Throughout the summer of 2021, I'm sorry, they responded in March, around March of 2021. Throughout the spring and summer of 2021, the Circuit Court heard the citations to these respondents five times and continued the citations all five times, leading to a final continuance, which went to September 29th of 2021. On September 13th of 2021, before the citations had expired or the continuances had expired, these three respondents filed their motions to terminate, and the Court granted those motions to terminate, which is why we are here today. We are appealing the order granting the motions to terminate the three citations to discover assets to the debtors. I'm sorry, to the third-party respondents, not the debtor. The third-party respondents still, at the time of the dismissal of the citations, still had owed some documents to the plaintiff, as well as none of the three appellees here today ever sat for a citation exam, which is the entire purpose of the citation process. First, so there are... Mr. Cassidy, why was that in that time frame? I'm sorry, Judge, why was what? They never sat for an examination. So that is a good question, and that is why I went into a little bit of background about the debtor. To answer your question directly, it's because the plaintiff was still investigating the assets of this gigantic business empire that exists. I mean, that's really the only way to describe it. It's worth tens of millions of dollars, if not many more. Six months simply is not enough time to investigate a debtor like this one. Are you limited in the number of examinations during this period? I don't believe that I'm limited in the number of examinations in any period. As long as there are citations out there, I can take as many citations as I want. You mean as many examinations as you want? Yes, citation examinations. Yeah, well, they're not citations. They're examinations. Okay. And you're saying during that time frame, you were busy trying to amass the documents and some structure as to the nature of all these assets that you're saying were there? That's correct. We had to untangle a web of assets. Why would you use an examination to assist you in that? Well, we were trying to examine the debtor first or as soon as possible. The debtor never responded fully to our document requests, and we actually have a motion to compel, which was granted in the circuit court as to the debtor for documents that he never gave us. And there's a petition for rule up tomorrow in the circuit court. He still hasn't given us all the documents. So you're saying you couldn't do an examination unless you had all these documents? Not properly. I could have done one, but... What do you mean by properly? Well, if I didn't have enough information to go forward with a citation exam, then I couldn't properly do my job. I couldn't examine with the knowledge that I needed during the examination in order to find the holes in the debtor's statements. So in this case, the debtor had already provided false information on his first response to the citation. He indicated that he had no businesses, and then he later indicated that he had only seven businesses. And those are things that in a citation exam, if he would say on the spot, I would have no ability to rebut. So the document production process is important because it gets to the bottom of what is true and what is not true so that we're not sitting in a citation exam trying to guess what is true. Why wouldn't you in an examination, which is recorded of record, am I correct? Yes. And under oath? That's correct. Why wouldn't you hold one anyway to get under oath statements that may later be found to be in conflict with documents? Well, respectfully, we did have that already with the response to the citation, which was signed by the debtor who provided false information already in his signed response to the citation, which was filed with the court. Was that verified? It's not verified. I believe that there is some sort of language at the bottom of it that it's either under oath or it's under 109 or something like that. Okay. Thank you. The important point to stress as to that issue is that the plaintiff was starting to uncover holes in the debtor's responses and the debtor's statements to us. And until I got to the bottom of things, I couldn't properly sit down with the other citation respondent. The plaintiff's counsel couldn't properly sit down with the other citation respondents because I needed to know what sort of false information they might provide. So in any event, no, I was not limited to the number of citation examinations I could take, but I was limited as a practical matter regarding the information that I needed before I could proceed. And I conveyed that to the attorneys for the debtor and the third parties that are on this appeal. So as I was saying, the circuit court judge continued the citations to September 29th, but the debtors, I'm sorry, the third-party respondents filed their motion to terminate on September 13th, which is premature. The court then on December 16th terminated the citations as to these three respondents. The Kalman case, which I cited in my brief, Kalman v. Varan at paragraph 27, says, quote, A creditor need not formally seek an extension for a citation proceeding to extend, and under Rule 277, a court, by continuing to entertain the citation proceedings, may extend the proceedings as justice may require. The circuit court in this case, in her December 16th order, stated that the plaintiff needed to bring a motion to extend, a formal motion. And that- So do you mean January, counsel, do you mean January 16th? Or is it, it was December 16th? It was a December 16th order. Thank you. December 16th, 2021. And the circuit court, in her December 16th order, entirely ignored the Kalman case, which is a first district case in her defense. Nonetheless, it was a recent case. It was decided in November of 2021. And I did include it in the brief before the court ruled on December 16th. And the court ignored that statement from the Kalman court that a motion is not necessary. And the court ruled that I did need to bring a motion, a formal motion. I had orally requested continuances at every single hearing throughout the summer of 2021, and the court granted those continuances. So the court, the court should have granted yet another continuance given the invest- given that the investigation was ongoing. The plaintiff also had filed three or four motions to compel, which were pending. One against the debtor and three against the three appellees in this case. Those motions to compel documents were pending when the court terminated the citations as to these three respondents. Additionally, the respondents argue in their brief that the plaintiff, in this case, is attempting to unilaterally extend the citation proceedings beyond the automatic six-month period. First, I just want to address the word unilaterally. We weren't doing anything unilaterally. We do things with the permission of the court and through the orders of the court. And the orders of the court granted my request to continue the citation proceedings. Additionally, the six-month period is a default rule. It is it is a timeline by which if the plaintiff has done nothing, then the citation should be dismissed for the plaintiff sitting on his hands doing nothing. In this case, the plaintiff did not sit on his hands doing nothing. We were actively pursuing information from 30 or more parties at the time. And now we're up into the 40s and 50s. Every every couple of weeks, we find more and more businesses of this debtor. So to say that, would it be more fair, Mr. Cassidy, to say you said it's a default rule and then use an example of the plaintiff doing nothing? Or is it more or less a rule to encourage a plaintiff to do something? I can't I can't say what the what was in the legislature's mind. I don't have legislative history behind. Well, I thought you just told us it was a default rule. Are you saying it can be construed as a default rule? Well, yes, because in the Shipley versus Hoke case, Shipley versus Hoke, the 4th district held, quote, the six-month time limit is merely the default period. So I guess I should have cited to that when I said it just now. So I appreciate you pointing that out. But it's it's a default period where clearly if the parties are engaged in extremely active litigation, there are motions to compel pending. There are 30 citations out there pending. We're trying to get documents from the debtor. We're trying to move on with the case. And right in the middle of all of that, the judge decided no more continuances. Well, the 277 rule says it's permissive. The court may grant extensions as justice may require. So is your argument that justice required and there was an abuse of discretion? What is our review standard? Yes, there's two arguments I have. The first is that the court had already continued the citation through September 29th and that the motion was premature. That should be a de novo review because the court can look at the orders in the court record. But if we if we get beyond that and in the alternative, if that is not enough for this court to reverse the decision of the circuit court, then the court did abuse its discretion. So at that point, we need to look at a different analysis, and that is whether the court properly dismissed the citation or terminated the citations on December 16th and not finding that there's good cause. There is good cause. There was absolutely good cause for the continuation. And that is why that is why the court continued the citations multiple times, even beyond the six month period to September 29th. There is good cause, as I've said out of my briefs and I've said out here today that the investigation was ongoing. Archer Bank would have liked its money right away. The other side has argued that it's somehow Archer's delay that a bank doesn't want money right away. And I think the court should see through that. I hope the court should see through that and see that the delay here is not Archer Bank's delay. Archer Bank does not want to delay obtaining an $11 million collection. I see that I don't have much time left. I will just note that the citations, a written request would have been superfluous, as the court ordered, because we had already obtained those continuances. Finally, I'll just, I'll just note that. Mr. Cassidy, your time has expired and you will have time in reply. Thank you, Judge. Any questions from the bench, though, before we go? Mr. Schwartz, you may respond. Thank you. May it please the court. My name is Andy Schwartz. I am here today on behalf of the appellees, Rhonda Vandenberg, MCV Ventures LLC, and TCB Development Properties LLC. And I'd like to start out by submitting that this case boils down to a single following question, which is, does the six-month automatic termination provision of Rule 277F actually mean anything? And I think the authority to start out with is from Bright v. Dickey, the quote that everybody all knows, that non-moving parties such as, in that case, such as Bright, should not be required to justify the application of a rule before it will be given effect. The rules of court we have promulgated are not aspirational. They are not suggestions. They have the force of law, and the presumption must be that they will be obeyed and enforced as written. And if you follow that holding, this appeal fails. The relevant language of Rule 277F says that a proceeding under this rule terminates automatically six months from the date of, and one of these subsections was the respondent's first personal appearance pursuant to the citation. So my clients do not need to justify the application of Rule 277F, and rather it is incumbent upon the party seeking relief from the rule to show good cause why the automatic termination should not apply by establishing good cause to the satisfaction of the lower court, such that the lower court says, I see good cause, I see that justice requires an extension, and this is what we're going to do. So, Mr. Schwartz, when would that six-month term expire, according to your position? Well, the six-month term would expire six months from, this is a little squishy, admittedly. The language says personal appearance. It has been interpreted in a couple of cases. The TM Ryan case cited, I think it was Rule 181B1, which included attorney appearances. If that were the case, it would be six months from when we first appeared. I first appeared by Zoom, I believe it was on February 19th of 21, which would have put it in August of 21. We didn't think that was fair. We preferred to go with the date that was in Wincrest Development, which was the date that we answered. We answered, Mr. Cassidy talked about that we responded around March of 2021. It was actually March 12th is when we served our citation rider responses and citation interrogatory answers. So, the expiration would be six months from that date, which would be September 12th, which fell on a Sunday. So, you follow to the following business day, which was September 13th. But that's based on your feeling of fairness. Well, we believe that under Wincrest, which is the better approach, that it should be six months from the time we responded to the citations. Because it really is not fair to not give the creditor the additional three weeks to impose the limitation to shorten it by three weeks before we actually responded to the citations. So, we've always taken that position. They keep talking about personal appearance, Mr. Schwartz. And the personal appearance, in this case, this was all by Zoom. It doesn't matter the technology. When did you first appear in this manner? I first appeared on February 19th by Zoom. So, that would be August 21. I believe that's correct. I mean, if we want to go and look at this rule, we've got to stay with language. That's true, except that Wincrest talked about the date when there was an answer. The other problem here is the clients never actually sat for a citation exam because the creditor here never gave us a date when they wanted to take a citation exam. I think it was four different emails to counsel saying, let me know when you'd like to take the exam. And I cannot force them to do that. I mean, it is the creditor's prerogative to take an exam or not take an exam. I did all that I could, which was to make my clients available to talk about scheduling. And in one of the emails that I sent, I even reminded Mr. Cassidy, counsel here, that we had a six-month deadline coming up, that there was a time limit on it. And I submit to you that a CIT, such as my clients, who timely responds to a citation and offers to appear for the exam, has a right to rely on the plain language of Rule 277F, consistent with Bright v. Dickey. And the CIT who participates should be able to expect that the supplementary proceedings will conclude within six months. So when did you actually go and make all of this argument that it expired in six months? I did that in the motion to terminate. When? That was, I think we filed it September 14 of 2021, which was the day after we believed that the citations had expired. Yeah, by your interpretation. Correct. Of another date than August 21st. Correct. We waited until six months after we had provided the information, and then we moved to terminate. And we filed, I think there were three separate motions to terminate, one on behalf of each of the citation exam CITs that I represent here today. And this is based on your reliance on Wincrest, right? Correct. Okay. Now, the other issue here is, if you look to the quote unquote equities, this appeal will also fail because my client's fully cooperated. In the cases that appellant cites, including Kalman, I'll focus on the conduct of the CIT. There are several cases that talk about the fact that there is an estoppel, which will prevent a noncompliant citation respondent from asserting a six-month rule. And that is fair because if you've got a judgment debtor or another CIT who is filing dilatory motions or just refusing to show up, you cannot reward that behavior by letting the noncompliant CIT cite the six-month rule and then say, hey, I delayed it too long, you should have stopped me, hee hee hee, we're done. That's not fair, and that's the basis of the estoppel. But if you take a look at the Wincrest case, which is really the case that I'm going to focus mostly on, Wincrest says that estoppel does not bar a third-party CIT from asserting the six-month deadline, even where the judgment debtor delayed the proceedings. And I've cited to that in the briefs, it's at page 603 of Wincrest, using the official reporter. Would you give that to me again, Mr. The quote, it's a short one, it's at Wincrest Development Company v. Giacomus, 359 ILAP 3rd 597 at page 603. And I'll read the passage, which says, here citation respondent neither delayed nor knew of the delay of the citation proceedings. Although defendants conduct may have delayed the citation proceedings, that conduct cannot be used as a basis to extend the deadline against citation respondent. Thus the rationale in Carlson for relaxing the six-month deadline is inapplicable here. So the point here, and this relates to the case at bar, because what you just heard counsel say is that he was concerned about the judgment debtor, who I don't represent, by the way. He was concerned about the judgment debtor not complying with the direct citation to the judgment debtor. Judgment debtor did something bad. And therefore, he wanted to wait and did not want to take the examinations of my clients. That's contrary to what Wincrest Development says. That's absolutely the opposite of what it permits. The extension to the six months is not permitted under these circumstances, according to Wincrest. You mean that they're protected from any extension because they're not the judgment debtor? No, they're protected from the extension because we are not the ones who caused the delay. It is only a delay by the citation respondent that relaxes the six-month rule as to that citation respondent. Somebody else's bad behavior is not our fault, and therefore not a basis to extend the six-month automatic termination provision against us. That's the issue, Justice. Even though they may be entwined? There is no record evidence that they are entwined here. I mean, one of the problems we had and one of the things that we discussed, we had filed a motion that was to be taken with the case, is there is a lot of extraneous stuff that's not in the record that keeps leaking into this argument. Even counsel's comments about the appellees still owed documents. Well, we never heard anything about still owing documents until after we had filed the motion to terminate the citation, and over a month after, we believe the citation is automatically terminated. The comments about the judgment debtor's business empire is worth tens of millions of dollars. There's nothing in the record to support that. The comments about constantly finding more information, there's nothing in the record to support that. This is all extraneous materials that we shouldn't even be considering here, and this is something that we've discussed in our brief and also in our motion. But let me get back to the point here, which is, in this case, one of our concerns is that the judgment creditor, by refusing to take the exam, is attempting to extend the six-month automatic termination provision unilaterally. We're not going to take the exam, so therefore, the time to do so must extend because your witness is not appearing for examination. That's not fair. That's contrary to what Rule 277 expressly says. The term automatic termination, or automatically terminates, is actually a pretty rare bird when you look at the Supreme Court rules. I think in our brief, we pointed out that we only could find three instances of the use of the term automatic, so this is something that's pretty unique here. I think that we can all agree that the Supreme Court knows what it's doing when it drafts its rules, and the fact that it used that language is important. The other thing, I say I'm running a little bit low on time. The case law on supplementary proceedings is less well-developed than in some other areas, than in a lot of other areas, and I would ask the court to consider the policy implications of this case, especially if you plan to issue an opinion. I will tell you, I'm a collection attorney, and this kind of issue does come up from time to time, and your decision is likely going to guide future collection practice throughout our state. I think we want to be careful about a decision here that rewards a judgment creditor for not taking care of business, with all due respect to opposing counsel, for exactly sitting on its hands and not doing what it should be doing within the time that the Supreme Court rules a lot. With any other time I have remaining, I'll be happy to try and answer any questions. Questions from the court? Yes, please. I'm sorry, go ahead, Justice McDade. I just have one, and that is, are you saying that these three appellees are not part of the Vandenberg conglomeration of companies? Well, Rhonda Vandenberg is not part of his business empire, she's his wife. The other two entities... They're being part of his business. There's a very small portion of it that is indirectly owned by a trust that the judgment debtor owns. It's mostly owned by other non-parties to the appeal. And what about the other one? TCB, I don't remember off the top of my head, I don't think he had any ownership interest in TCB. I think it was, my recollection is that MCV Ventures, which is one of the appellees, and there was another entity called MCV Partners, which successfully moved to terminate and is not part of this appeal. Okay, thank you. Justice Holdridge, I had one question, please, for Mr. Schwartz. Thank you. Thank you, Mr. Schwartz. With regard to the three citation appellees, after you filed your response on, I believe you said March of 2021, March 12th, was there ever a motion to compel filed by Mr. Cassidy seeking to secure additional information from the three appellees? Well, not during the lifetime of the citations. There was a motion that was filed, I believe it was October 24th, which was over a month after we filed our motion to terminate. Okay, thank you. The trial judge found it untimely, tactical, and specious, and we had argued that it was a pretext. Thank you. Any further questions? No. Thank you very much, Justice. Thank you. Thank you, Mr. Schwartz. Mr. Cassidy, you have five minutes in reply. Thank you, Justice. Mr. Schwartz has argued today that there's no record of evidence that they are intertwined, meaning the three appellees today. It is his wife and two businesses that he is affiliated with now. He says there's no evidence of it. It's because the wife and the two businesses did not fully respond to our citations, and that is why we filed the motion to compel. The judgment debtor could have also given us more information as to his interests in the two businesses and his business relationship with his wife, but we didn't get anything from the judgment debtor either. So the point here is that we were going into this dark, and they kept us in the dark for six months until it was long enough that they could bring a motion, a procedural motion, to say this should be terminated now because this arbitrary time of six months has passed. So that's why there's nothing in the record. There are lots of things in the record as to the business empire, just as McDade asked about, or at least alluded to, that there's a conglomerate. I mean, we did have to send a subpoena to the Illinois Secretary of State because we weren't getting answers from the judgment debtor or any of those third-party respondents. So the subpoena to the Illinois Secretary of State, they responded and indicated that the debtor had an interest in 75 different businesses, either the registered agent, and those are just off record, not that he had some investment interest that the Secretary of State doesn't even know about, either the registered agent, the president, the secretary. And were those two entities that are not the wife included in that information that you got from the Secretary of State? Yes. Yes, they were. And that's important. And admittedly, those were included on his, those were two of the seven that the judgment debtor included in his amended response. So, but again, he only gave us seven, and we found from the Illinois Secretary of State, 75. And when was the amended response tendered? I don't know off the top of my head. It was, it was shortly after the initial response. So it probably was around April or May of 2021. And when did you subpoena the Secretary of State? It was shortly thereafter his amended response. So again, probably, I can't say for sure, because I just don't remember. I don't want to tell you the wrong thing, but I expect it was somewhere around April or May of 2021. But it was before August 21st in any event, correct? That's correct. It was before August 21st. However, when you're looking at a list of 75 business entities, which are owned by LLCs or family trusts or land trusts, it's not as simple as just finding out who owns those LLCs or who's the members of the LLCs or which corporations run those LLCs. I mean, it's extremely complicated, and it is impossible to do this in six months. It's even more impossible to do it when you have third parties and the debtor not responding. Mr. Schwartz also mentioned the Bright v. Dickey case, only to say that, you know, the rules are not suggestions, they should be obeyed and the language of the rule should be obeyed. The language of this rule says that the party to whom the citation is directed must personally appear in court. The parties did not appear in court. They have never appeared in court. They have never sat for a citation exam. Only their attorneys have appeared. And if we're going to look at the language of the rule, which is what Mr. Schwartz suggested that we do, then the parties should have personally appeared in court, or if they're a corporation or an LLC, then through one of their representatives, they did not do that. Rhonda Vandenberg never appeared in court. The representatives of these appellees did not appear in court. And more importantly, or equally as important, they didn't appear for a citation exam. So we just don't have the information. I honestly don't know that which I do not know. I don't know what's out there. I don't know what other information they could have given us because they did not respond properly. I did tell the circuit court on many occasions in requesting the continuances that this investigation was ongoing. Mr. Schwartz said today that there's no evidence in the record that I was investigating or that the plaintiff was investigating and that his investigation was complicated and ongoing. I did tell the circuit court that. I said, Judge, we found another 10. Or at the next hearing, we found another 20 businesses. This is complicated. We found that his children have trusts, etc., etc. I did explain that to the circuit court. And that is evidence that the investigation was ongoing. It's a good reason for the court to continue the citations further. I did give the circuit court good reasons. The circuit court did abuse its discretion in rejecting those reasons in its December order. The court's December 16th order should be reversed. The citation should be put back into place retroactively to December 16, 2021. And the respondent should be required to respond fully with documents and sit for a citation exam. We ask those things respectfully of this court. And I see my time is up. But if any justice has questions, I'm happy to answer. Any questions from the bench? No, no. I have one question. Could you briefly, and I mean briefly, address the Windcrest case that's being relied upon by Pona? Yes. In that case, that case actually says, Mr. Schwartz read the citation. I'm trying to be as brief as I can. In that case, he read a quote that says, here, the citation respondent neither delayed nor knew of the delay in the citation proceedings. So in that case, there was some innocent party. It could have been Bank of America or some other party that had nothing to do with this, with the citation in that case. Here, we have his wife and we have his two businesses, which, how could they be more intertwined when his wife knows that her husband owes a bank $11 million and is rushing to get these citations terminated? That is just a clear indicator of everyone being intertwined. Thank you. Thank you. Thank you, counsel. Any follow-up questions from the bench? No. Okay. Thank you, counsel, both for your arguments in this matter this morning. And this matter will be taken under advisement and a written disposition shall issue. The clerk of our court will escort you out of our remote courtroom at this time, and we'll proceed to conference.